# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## D. C. T. DAVIS, JR., TRUSTEE, ET AL., v. THOMAS C. BEURY, ET ALS.

### November 16, 1922.

1. VENDOR AND PURCHASER—*Marketable Title—Successive Appeals—Law of the Case—Case at Bar.*—In the opinion of the court below involved in a former appeal in the instant case, a suit by the vendee for damages for breach of contract, the lower court construed the contract of sale to provide that the vendors would convey by a good and sufficient deed a marketable title. Appellants on the present appeal relied upon that holding as the law of the case. That being so, the Supreme Court of Appeals considered the law of the instant case to be that the vendors did not by the contract undertake to convey a perfect record title, but only a marketable title.

2. VENDOR AND PURCHASER—*Marketable Title—Definition.*—A marketable title is a title which is in fact a good title, or one which can be made so by application of the purchase money, although it may not so appear of record.

3. VENDOR AND PURCHASER—*Breach of Contract by Vendor—What Damages Purchaser Entitled to—Loss of his Bargain.*—For a vendee to be entitled, under the doctrine in Virginia, to recover any damages, beyond the return of the purchase money actually paid, with interest, for a breach of the contract by the vendor to convey the title contracted to be conveyed, at the time fixed for the completion of the contract, the vendee must prove that the vendor, either acted in bad faith in originally undertaking to convey such title at such time, or that, since the undertaking and on or before the time fixed for the completion of the contract, he voluntarily disabled himself from making the conveyance, or that he was able at such time to make the conveyance contracted for and willfully neglected or refused to do so. Otherwise, in Virginia, a purchaser is not entitled to recover for the loss of his bargain, if the purchaser has paid nothing, the general rule is that his damages are only nominal.

4. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Suit for Damages—Equitable or Legal Rules.*—Where the vendee does not institute a suit for specific performance, but declares upon and seeks damages for the breach of the contract by the vendor, the rights of the parties are determined in accordance with the rules of law applicable as of the time fixed for the completion of the contract; not by the rules

applied in equity, under which the time for the completion of a contract is sometimes extended.

5.  VENDOR AND PURCHASER—*Breach of Contract by Vendor—Suit for Damages—Time of Inability of Vendor to Convey.*—Where a vendee is asking for damages for a breach of the contract to convey, when the authorities speak of the ability or inability of the vendor to convey the title contracted to be conveyed, of his disabling himself from making or his neglect or refusal to make the conveyance, they have reference to the ability, or inability, neglect or refusal to so convey at the time fixed for the completion of the contract, not to any subsequent time.

6.  VENDOR AND PURCHASER—*Breach of Contract by Vendor—Suit for Damages for Breach—Motive and Conduct of Vendor.*—Where the vendee sues for damages for breach of the contract, thus electing not to seek to enforce its performance, he necessarily treats the contract as broken, and the measure of the damages, in so far as affected by the motives and conduct of the vendor, is wholly determined by the vendor's motives and conduct prior to and at the time of the breach of the contract.   In such a suit, the vendee cannot rely upon the conduct of the vendor after the breach of the contract, except as evidencing the lack of good faith in his conduct prior to or at the time of the breach.

7.  VENDOR AND PURCHASER—*Breach of Contract by Vendor—Election by Vendee Between Equitable and Legal Remedy.*—The vendee cannot hold on to the contract as binding upon and fixing the duty of the vendor after its breach, if, instead of seeking specific performance of it, so as to rely upon the contract as still in force, he sues for damages for its breach.   He has the right of election between the two remedies. He must choose between the two and having chosen he must abide by his choice.   He cannot have the relief afforded by the remedy in equity, when he has chosen the remedy at law.

8.  VENDOR AND PURCHASER—*Breach of Contract by Vendor—Damages to which Vendor Entitled—Case at Bar.*—In the instant case the preponderance of the evidence did not prove that the vendors acted in bad faith in making the contract to convey a good, *i. e.*, a marketable, title, or in what they did or neglected to do on or before the time fixed for the completion of the contract, and therefore the vendees were not entitled to recover for the loss of their bargain in a suit for damages.

9.  VENDOR AND PURCHASER—*Time as Essence of the Contract.*—At law, the time fixed for the completion of an executory contract of sale is of the essence of the contract, though, of course, it may be extended by mutual assent of the parties.

10. VENDOR AND PURCHASER—*Marketable Title—Incumbrances.*—Where existing incumbrances can be removed by the application of a definite portion of the purchase money, they do not render the title unmarketable.

11. VENDOR AND PURCHASER—*Marketable Title—Deeds in Escrow.*—Defects in title, consisting of the need of certain conveyances, which were supplied by deeds in escrow subject to delivery upon the payment of certain sums of money, did not render a title unmarketable, because those defects could have been removed by the application of a definite portion of the purchase money.

12. VENDOR AND PURCHASER—*Marketable Title—Title by Adverse Possession.*—Title by adverse possession is, under certain circumstances, a marketable title.

13. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Good Faith of Vendor—Knowledge of Defects.*—Where none of the defects in title existing at the time fixed for the completion of the contract were caused by the vendors after the sale, and were unknown by the vendors to exist at the time of the executory contract of sale, except defects equally well known to the vendees, the vendors cannot be said to have acted in bad faith.

14. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Bad Faith of Vendor—Abstracts of Title.*—Vendors employed and relied upon able and reputable attorneys to perform their undertaking to furnish the vendees with abstracts of title.

    *Held:* That, even if there was a breach of contract on the part of the vendors in respect to the abstracts required, there was no evidence of bad faith on their part.

15. VENDOR AND PURCHASER—*Breach of Contract by Vendors—Good Faith of Vendors—Case at Bar.*—In the instant case, the facts that the vendors made tender of a deed and gave the vendees the option to take the lands with such title as the vendors could convey, before the vendors made any contract of sale to anyone else; that the vendors made no profit by a subsequent sale to others after the vendees declined to take the property, and that the subsequent purchasers considered marketable the title which the vendees declined to take, dissipate any suspicion as to the motives of the vendors and stamped the conduct of the vendors as having been in good faith throughout the transaction.

16. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Damages—Advertising and Developing Property for Resale.*—In a suit by vendees for breach of a contract of sale by the vendors, vendees are not entitled to recover for the value of the time of one of them in advertising and developing the property for resale, where possession of the property had not been delivered to the vendees.

17. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Value of Improvements.*—If the title fail the purchaser cannot recover against a vendor acting in good faith the value of improvements placed by him on the premises. If he expends money in improvements when he is uncertain about the title, he does so at his own risk.

18. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Damages—Ex-*

*penses of Examining Title—Case at Bar.*—As a general rule the purchaser, on failure of the title, may recover as damages, in addition to such part of the purchase money as has been paid, the expenses incurred by him in examining the title. If the vendor is innocently mistaken as to the goodness of his title and the contract contains no warranty of ownership, express or implied, it has been held that the purchaser cannot recover such expenses. In the instant case, the contract contained an implied warranty of ownership, and therefore the vendees were entitled to recover attorneys' fees paid for passing titles to the land examined.

19. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Damages—Expenses of Examining Title—Case at Bar.*—In the instant case, the fact that the contract provided that the vendors were to furnish abstracts of title would not alter the principle that upon breach of contract the vendee may recover expenses incurred by him in examining the title, even if the abstracts had been furnished as contracted for. The abstracts had to be verified, which involved examining the title. The contract of sale indeed gave to the vendees time to examine the abstracts of title, and thus made it plain that a reasonable outlay by the vendees for that purpose was contemplated.

20. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Interest on Purchase Money Paid.*—As a general rule, upon breach of contract by the vendor, the vendee is entitled to interest upon the recovery back of the purchase money paid.

21. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Tender of Purchase Money Paid—Keeping Tender Good.*—As to whether in order to defeat interest upon breach of contract by the vendor, a tender of purchase money paid must be "kept good," depends upon the particular circumstances of each case. In view of the circumstances that only part of the purchase money paid was tendered vendees in the instant case, the tender must have been "kept good" in order to have stopped the running of interest.

ON PETITION FOR REHEARING.

22. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Expenses of Vendee in Examining Title—Interest—Pleading—Special Damages.*—In an action by vendees against vendors for breach of contract, interest, prior to verdict or decree, on money expended by the vendees in attorneys' fees for investigating title to the property, if recoverable at all, would be recoverable as special damages, and hence would have to be specially alleged in order to be recovered.

23. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Expenses of Vendee in Examining Title—Interest.*—In an action by vendees against vendors for breach of contract, interest, prior to verdict or decree, on money expended by the vendees in attorneys' fees for investigating title to the property, is not allowable. Indeed interest, prior to ver-

dict or decree, on purchase money actually paid and required to be returned by vendor is not allowed in all cases. And where interest is allowed on money required to be returned, there are obvious differences between the character of the liability to return money actually paid to the vendor, of which he has had the use and benefit from the time of its receipt, from money paid out by the vendee to others, such as expenses incurred in investigating the title pending the completion of the contract, of which the vendor has at no time had the benefit.

24. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Expenses of Vendee in Examining Title—Interest—Provision in Decree for Prompt Payment.*—In the instant case where the Supreme Court of Appeals, in an action by vendees for damages for breach of contract, found the vendor liable to repay the vendee $3,500 for expenses in investigating the title, and inadvertently omitted from the decree provision for prompt payment, a new decree was entered providing for the payment of that sum within thirty days, or that the same should bear interest from the expiration of such thirty days until paid.

Appeal from a decree of the Circuit Court of Alleghany county. Decree for defendants. Complainants appeal.

*Amended and affirmed.*

This is a suit in equity instituted by D. C. T. Davis, Jr., trustee, and D. A. Langhorne (revived as to D. A. Langhorne upon his death in the name of his administratrix), against Thomas C. Beury and others, the object of which is to recover and enforce by attachment the claim of appellants against said Beury and others, appellees, for damages in a large amount alleged to be owing to the appellants by said Beury and others by reason of the alleged breach by the latter of a certain contract of sale of real estate, in writing, to which the said Beury and others, the vendors, were parties of the first part, and the said Davis and D. A. Langhorne, the vendees, were parties of the second part.

The parties to the contract will be hereinafter referred to as vendors and vendees, respectively, or by their individual names.

The damages sought to be recovered are for the loss to the vendees of the bargain, consisting of the difference between the contract price and the alleged market value of the land, which was the subject of the contract of sale, at the time of the alleged breach of the contract; and also a certain sum of money expended by D. A. Langhorne in having the titles to the land examined, and for the value of time alleged to have been occupied in advertising and developing the property for resale.

Possession of the property was not delivered by the vendors to the vendees.

The decree under review allowed the vendees to recover the two payments of $10,000.00 each made on account of the purchase money for the land and entered judgment therefor, with interest from the dates of such respective payments; but declined to allow any other damages. From that decree the appellants have appealed. The appellees assign as cross-error the action of the court in allowing interest on one of the said payments, to-wit, the $10,000.00 paid on the date of the contract.

The aforesaid contract bears date August 4, 1905, and was acknowledged for record on the next day. The sale which is involved in controversy in this suit embraced the fee and mineral rights in approximately 32,000 acres of land, lying in Fayette, Greenbrier and Nicholas counties in West Virginia, at the price of $27.00 per acre. The land consisted of about two hundred different parcels, with a great number of different chains of title. The vendors were the widow and heirs of J. L. Beury, dec'd, and derived such title as they had to said lands from the latter, who died heavily indebted, much of the indebtedness consisting of unpaid purchase money for and liens upon said lands, the vendors having the equitable title only to some of the lands, the deeds

of conveyance of certain of such lands to the vendors being in escrow at the time. of said contract.

Prior to said contract a chancery suit had been instituted in the circuit court of Fayette county, W. Va., by said vendors, the object of which was to sell the said land or so much thereof as might be necessary to satisfy said indebtedness. This suit was pending at the time said contract was entered into, but no decree of sale of the land had been as yet entered therein. Creditors to a large amount existed at the time, who were pressing for the payment of their debts; and it was mutually understood by the vendors and vendees that said suit was available to both in order to properly apply the purchase money which had to be paid to satisfy liens and to obtain escrow deeds.

The aforementioned situation was in a general way well known to the said vendees at the time the said contract was entered into; and they knew and understood fully that the object of the sale on the part of the vendors was to pay off said debts and liens and to obtain said escrow deeds.

The said contract provided that the payment for said land should be as follows:

"  ·*   *   *   one-third cash, and the residue in three equal installments, with interest at six per cent., in six, twelve and eighteen months from the delivery by the parties of the first part hereto unto the said D. C. T. Davis, Jr., trustee, or his assigns, of an apt and proper deed conveying said lands with covenants of general warranty."

The contract also contained, among other things, the following provisions:

"This agreement further witnesseth: 3. That the said D. C. T. Davis, Jr., trustee, has this day paid unto the said Thomas C. Beury, Joseph E. Beury, Harry B.

Beury, Daisy E. Nichol, and Julia A. Beury, the sum of
$10,000.00 to be credited upon the cash payment for the
lands     *     *     *     , which said payment is evidenced by
a sight draft drawn by D. A. Langhorne to the order of
D. C. T. Davis, Jr., trustee, on the First National Bank
of Lynchburg, Va., and endorsed by the said Davis to
the order of A. S. Guthrie, agent for the said Thomas C.
Beury and others and parties of the first part hereto,
and the said parties of the first part hereby acknowl-
edge the receipt of the same.   It is understood, how-
ever, that, if the parties of the first part should request,
the said Guthrie may apply said $10,000 to the pur-
chase of the said Myles, Bennett and Crookshank tracts
of land hereinbefore mentioned and described, and in
event said sum of money should be so used, the same
shall not be deducted from the cash payment on the
lands described in this contract, but shall be credited
upon the deferred payments thereon.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"4. Parties of the first part hereto shall furnish to the
parties of the second part an abstract of title of the lands
*  * as speedily as possible, and not later than the 1st day
of October, 1905, and may at the same time tender to
the said D. C. T. Davis, Jr., trustee, or his assigns, an
apt and proper deed conveying said lands according to
their metes and bounds as now known, and with cove-
nants of general warranty, and at the expiration of fifteen
days thereafter (which time is given to the parties of
the second part to examine said abstract of title and
deed), the cash payment upon said lands shall at once
become and fall due, provided said deed be found to be
satisfactory by the parties of the second part.

"5. If, however, the parties of the second part should
desire to survey said tracts of land, or any of them, they
may do so at their own expense but such survey shall

not postpone the settlement of the cash payment on said lands as hereinbefore provided. The parties of the first part, in the event of a demand for any such survey, shall send at their own expense a surveyor with the surveyor of the parties of the second part, whose duty it shall be to point out the boundary lines of said lands and verify the survey of the parties of the second part. In the event any such survey should decrease the number of acres in any of the tracts of land described in Exhibit 1, there shall be a compensatory abatement of the purchase money unto the parties of the second part, and in the event the number of acres in said tract of land, or either of them, should be found to be greater than the number contained in the deed tendered, then the parties of the second part shall pay unto the parties of the first part for such excess at the rate per acre named in the contract. Neither shall any survey that may be demanded by the parties of the second part, or their assigns, postpone any of the deferred payments as they may fall due.''

The $10,000.00, mentioned in the contract as paid as a credit on the cash payment of one-third of the purchase money, was paid upon the execution of the contract as stated therein.

On October 4, 1905, the vendee, D. A. Langhorne, made a loan to the vendors of the sum of $10,000.00, which it was mutually agreed in writing, while in the form of a loan, should in fact be accepted and credited as a further payment in part of the said cash payment when and if the same should become due and payable under the terms of the contract, with interest on such $10,000.00 from October 5, 1905.

On October 7, 1905, the vendors, through their attorneys, delivered to counsel for the vendees a number of memoranda pertaining to the title to the various tracts

of land embraced in said contract and also draft of the
form of the proposed deed provided for in the contract;
and this furnishing of memoranda of abstracts of title to
counsel for the vendees continued thereafter until the
14th day of November, 1905. On the last named date
the vendors, through their attorneys, advised the ven-
dees, through their counsel, of certain defects in the
chain of title to certain of the lands situated in Green-
brier county and embodied a communication from
counsel employed at Lewisburg, W. Va., setting forth
certain defects not pointed out in the abstracts of title
theretofore furnished.

Thereafter, on November 24, 1905, the vendees,
through their attorneys, delivered to the vendors,
through their attorneys, written objections to the title to
said land, setting forth some 671 objections to the title,
consisting of alleged defects in the verious chains of
title, such as unreleased vendor's liens, defective ac-
knowledgments to deeds, irregular court proceedings,
failure of proper parties to unite in certain deeds, cer-
tain portions of the land as to which the vendor's title
depended upon title by adverse possession, and asking
for more definite evidence which would make it appear
that title had been so acquired, etc., etc.; showing va-
rious alleged defects in the record title.

Meanwhile, since shortly after October 7, 1905, being
in pressing need of money to satisfy the creditors afore-
said, who were impatient of the delay, the vendors had
been urgent in their requests that the vendee, Lang-
horne, would advance them some more money for use
in satisfying the creditors. Accordingly negotiations
were entered upon between the vendors and vendees
looking to a further advancement to be made by the
vendee, Langhorne, to the vendors for use in satisfying
creditors. And on December 8, 1905, the vendees and

vendors and their attorneys met at Charleston and discussed the subject of such contemplated advancement.

There is a conflict in the testimony as to just what was said and done at this December 8th conference. It is sufficient to say here, however, that the result of this conference was the failure to reach any agreement on the subject of the contemplated further advancement aforesaid.

Thereafter, on December 11, 1915, the vendors gave the vendees the following notice in writing:

"Charleston, West Virginia,
        "December 11, 1905.
"To D. C. T. Davis, Jr., Trustee for D. A. Langhorne,
        "and
"D. A. Langhorne.

"You will please take notice that in accordance with the terms of a certain contract dated on the 4th day of August, 1905, between the undersigned parties of the first part, and yourselves as party of the second part, we have this day executed and acknowledged a deed with covenants of general warranty of title, conveying to D. C. T. Davis, Jr., trustee, the tracts and parcels of land mentioned in said contract, situated in Fayette, Greenbrier and Nicholas counties, in the State of West Virginia, which said deed would have been executed on the 7th day of October, 1905, at which time a copy thereof was filed with you, but for the request of the said D. C. T. Davis, Jr., that the same be not then executed; and at the conferences thereafter between you and the undersigned no demand was made for the execution thereof, and as you know, we stood ready and willing ever since the said 7th day of October, 1905, and expressed ourselves at said conferences, to execute and deliver said deed in accordance with the terms of said contract of August 4, 1905.

"You will further take notice, that said deed is now tendered to you, upon your making the cash payment and executing the notes therein mentioned and described; and you may, out of the cash payment, take up the escrow deeds, conveying certain of said lands to the late J. L. Beury, of which you have had knowledge during these negotiations.

"You are further notified, that in the event you do not now accept said deed and make the said cash payment and execute the said notes, we shall leave the said deed at the Charleston National Bank, in the city of Charleston, Kanawha county, West Virginia, in escrow, until 12 o'clock, noon, on said December 16, 1905, until which time you may take the said deed by paying the said cash payment to the Charleston National Bank for us, and executing and delivering to the said bank, for us, the said deferred payment notes mentioned in said deed. And in making settlement at said bank the same proposition regarding the taking up of the escrow deeds aforesaid will apply.

"We hereby tender to you the ten thousand dollars paid to A. S. Guthrie, agent, as set forth in said contract of August 4, 1905, the same not having been used for the purposes set forth in said contract.

"If the said deed is not accepted by you, and the cash payment made and the deferred notes executed on or before 12 o'clock noon on December 16, 1905, the said contract of August 4, 1905, will be at end and all your rights thereunder shall cease, and we will not thereafter recognize the same as binding upon us. We do not consider the same binding now, but give you this additional time to avoid any misunderstanding and for the purpose of giving you ample time to comply with your part of its provisions.

"Very respectfully,"

(Signed by the vendors by their attorneys).

On the same day the vendee, Langhorne, gave the vendors the following notice:

"Charleston, W. Va., December 11, 1905.
"To" (the vendors, naming them).
"You and each of you are hereby notified that I stand ready and willing to perform and comply with all the terms and provisions of a certain contract in writing, made and entered into the 4th day of August, 1905, by and between you and each of you, as parties of the first part, and D. C. T. Davis, Jr., trustee, and D. A. Langhorne, as parties of the second part, whereby and by the terms of which said contract I, with your knowledge, consent and ratification, became the purchaser of the lands referred to and set out in said contract, containing about 32,000 acres, more or less, whenever you deliver the deed and abstract of title provided for in said last named contract; and I now here call upon you and each of you to at once furnish said deed and abstract, as in said contract you and each of you agreed and bound yourselves to do."
(Signed by D. A. Langhorne by his attorneys.)

On the next day the vendee, Langhorne, gave the vendors the following further notice:

"Charleston, W. Va., December 12, 1905.
"To" (the vendors, naming them).
"You and each of you are hereby notified that I stand ready and willing to perform and comply with all the terms and provisions of a certain contract in writing made and entered into the 4th day of August, 1905, by and between you and each of you, as parties of the first

part, and D. C. T. Davis, Jr., trustee, and D. A. Langhorne, as parties of the second part, whereby and by the terms of which said contract I, with your knowledge, consent and ratification, became the purchaser of the lands referred to and set out in said contract, containing about 32,000 acres, more or less, whenever you deliver the deed and abstract of title provided for in said last named contract; and I now here call upon you and each of you to at once furnish said deed and abstract, as in said contract you and each of you agreed and bound yourselves to do."

(Signed by D. A. Langhorne by his attorneys.)

On December 16, 1905, the vendees did not accept the deed of conveyance to them, or pay the balance of the unpaid cash payment, or execute and deliver the notes for the deferred payments provided for in the contract of sale, in accordance with said notice from the vendors of date December 11, 1905. Thereupon the vendors, in accordance with such notice, on December 16, 1905, elected to consider the contract of sale as at an end; refused to recognize the contract as further binding upon them; and declared the same to be wholly abrogated, as per the following notice:

"To D. C. T. Davis, Jr., Trustee for D. A. Langhorne, and D. A. Langhorne:

"Whereas, the hour of twelve o'clock, noon, of December 16, 1905, has arrived and you have failed, as you were notified to do, to take up the deed which the undersigned deposited with the Charleston National Bank, of Charleston, Kanawha county, West Virginia, and make the cash payment and deliver the deferred payment notes mentioned in said deed, as provided by

the terms of a certain contract dated the 4th day of August, 1905, relating to certain lands owned by the undersigned in Fayette, Greenbrier and Nicholas counties, West Virginia, and

"Whereas, said contract has been by the undersigned abrogated and declared null and void in accordance with said notice above referred to, which was dated on the 11th day of December, 1905, a copy of which was served upon both of you:

"Now, therefore, we here and now tender to you the ten thousand dollars ($10,000) mentioned in said notice as having been paid on account of said contract of the 4th day of August, 1905, and demand that you accept the same; and

"We further now demand that you return to us the copy of proposed deed for said lands, prepared by us and filed with you on the 7th day of October, 1905, as well as all abstracts of title to said lands mentioned in said contract of August 4, 1905, between you and the undersigned; and any and all other title papers that may have been delivered to you on account of said contract.

"Respectfully,"

`      (Signed by the vendors by their attorneys.)

Subsequently the said vendors reached an agreement of sale of said land to other parties, namely, Wm. E. Chilton and others (who were willing to take the title which the vendors could convey, with the assistance of the decrees of court in said suit pending in Fayette county, W. Va., in the application of the purchase money, and which the vendors had offered, substantially, by the said notice of December 11, 1905, to convey to the said prior vendees, but which the latter had declined to accept, as aforesaid), at the price of $30.00 per acre, the terms as to the cash and deferred payments

being slightly less favorable to the vendors, but substantially the same as those provided for in the aforesaid contract of sale of August 4, 1905.

Accordingly, at a special term of the circuit court of Fayette county, W. Va., the vendors procured a decree, entered on January 22, 1906, in the aforesaid suit pending therein, authorizing the said lands to be sold at public or private sale by commissioners then appointed for the purpose. Pursuant to such decree such commissioners made sale of the land to Chilton and others, in accordance with the aforesaid agreement reached between them and the said vendors as aforesaid, and reported the sale to the court on January 25, 1906. By decree of the court entered on that day such sale was confirmed, with provisions for the application of the purchase money.

Although the sale to Chilton and others was at a price of $30.00 per acre, being $3.00 per acre more than the sale to the vendees, Langhorne and Davis, the evidence in the cause discloses that by reason of certain commissions which went to Chilton, the vendors were entitled to receive the benefit of precisely the same price net per acre under the two sales.

Other references to the evidence and material facts will be found in the opinion.

*Randolph Harrison*, *Staige Davis*, and *Brown, Jackson & Knight*, for the appellants.

*John H. Holt*, for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

We will first consider the claim of appellants to damages for the loss of their bargain, consisting of the dif-

ference, if any, between the contract price and the market value of the land at the time of the alleged breach by the vendors of the contract of sale involved in this suit.

Upon such consideration the first question which arises is this:

1. What title did the vendors by the contract involved in this suit undertake to convey to the vendees at the time fixed for the completion of the contract?

[1, 2] In the opinion of the court below involved in a former appeal of the instant case (*Beury* v. *Davis*, 111 Va. 581, 69 S. E. 1050), the lower court construed the contract to provide that the vendors would, at the time fixed for the completion of the contract, convey by a good and sufficient deed, "a good title, not a doubtful or bad one," which the court stated meant a marketable title, saying, "evidently it was contemplated that marketable titles were to be made." The correctness of this holding is not questioned by the assignments of error; indeed the petition of appellants for the present appeal relies upon such holding as the law of the case. That being so, in the view we take of the law applicable to the contract, when so construed, and of the facts involved in the instant case, we are relieved of the need of making any pronouncement of our own upon the question whether the terms of the contract provide for a perfect record title or merely for a marketable title, when read in the light of the authorities cited for the appellants. Such authorities are *Sachs* v. *Owings*, 121 Va. 162, 92 S. E. 997; *Mullen* v. *Cook*, 69 W. Va. 458, 71 S. E. 566; Maupin on Marketable Titles to Real Estate, pp. 210-221. (See also the last named work [3rd ed.] pp. 789-792.) We shall consider the law of this case to be that the vendors did not by the contract involved in this suit undertake to convey, at the time fixed for the

completion of the contract, a perfect record title, but only a marketable title, which is a title which is in fact a good title, or one which can be made so by application of the purchase money, although it may not so appear of record. *Sachs* v. *Owings, supra.*

The next question for our consideration is this:

2. What is the doctrine in Virginia on the subject of the right of the vendee to recover damages, beyond the return of the purchase money actually paid, with interest, for the breach of such a contract by the vendor?

[3] The answer is that for a vendee to be entitled, under the doctrine in Virginia on that subject, to recover any damages, beyond the return of the purchase money actually paid, with interest, for the breach of a contract by the vendor to convey, the title contracted to be conveyed at the time fixed for the completion of the contract, the vendee must prove that the vendor either acted in bad faith in originally undertaking to convey such title at such time, or that, since the undertaking and on or before the time fixed for the completion of the contract, he has voluntarily disabled himself from making the conveyance, or that he was able at such time to make the conveyance contracted for and willfully neglected or refused to do so.

The doctrine on the subject adopted in Virginia is set forth in the authorities as follows:

In *Mullen* v. *Cook, supra* (69 W. Va. 458, 71 S. E. 567), this is said:

"What is the correct measure of damages for the breach of contract to convey land? The rule is not uniform. The Supreme Court of the United States, and the courts of most of the States, have adopted as the rule for measuring the damages in such case the difference between the market value of the land at the time

of the breach, with interest, less the purchase price unpaid, without regard to the reason for the failure to convey. 29 Am. & Eng. Ency. L. 724, 725; and 2 Southerland on Damages, 579. But it is not the rule in England, nor the rule adopted in Virginia before the formation of this State. In Virginia a purchaser is not entitled to recover for the loss of his bargain. The value of the land at the day of sale, and not its value at the time of the breach, is to be considered; and if a price has been agreed to, that is to be taken as the best evidence of value. Consequently, in Virginia, if the purchaser has paid nothing, the general rule is that his damages are only nominal. Of course, the purchaser is always entitled to recover the money paid, together with the interest." 2 Min. 865; *Stout* v. *Jackson*, 2 Rand. (23 Va.) 132; *Threlkeld's Adm'r* v. *Fitzhugh's Ex'x*, 2 Leigh (29 Va.) 451; *Thompson's Ex'r* v. *Guthrie's Adm'r*, 9 Leigh (36 Va.) 101; *Stuart* v. *Pennis*, 100 Va. 612, 42 S. E. 667; *Wilson* v. *Spencer*, 11 Leigh (38 Va.) 261.

"The above is the general rule in Virginia, and, therefore, the law of this State, because those early Virginia decisions are binding authority on us. This general rule, however, is subject to exceptions. It does not apply, if after the sale the vendor has voluntarily put it out of his power to comply with his contract, as for instance by making sale to another; or if he has good title and wilfully refused to convey. In such case he will be held liable for the enhanced value of the land; in other words, he will then be held liable to the vendee for his loss of bargain. *Wilson* v. *Spencer*, 11 Leigh (38 Va.) 261. See also opinion of Judge Snyder in *Butcher* v. *Peterson*, 26 W. Va., at p. 454.

"Whether the plaintiff can prove a case entitling him to substantial damages depends, not alone upon the mere breach of contract, but also upon proof that the

vendor has, since sale to the vendee, voluntarily disabled himself from making the conveyance, or that he is able to make good conveyance and willfully refuses to do so.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"If the defendants have acted in good faith and are unable from good cause to comply with their contract, then the plaintiff can recover only nominal damages. \*   \*   \*."

As said in Maupin on Marketable Title to Real Estate, pp. 210, 211: "The question whether the purchaser is entitled to nominal or substantial damages for breach of the contract usually arises under the one or the other of the following circumstances:

"(1). When the vendor acts in good faith, believing that his title is free from objection.

"(2). Where the vendor acts in bad faith knowing that he has no title and no prospect of acquiring it.

"(3). Where, having no title, the vendor expects to acquire it in time to complete the contract.

"(4). Where the title is defective or the estate incumbered, and the vendor has the power to cure the defect or remove the encumbrance, but neglects or refuses to do so."

"It need hardly be said that the purchaser may always recover for the loss of his bargain whenever the vendor, having a good title, perversely and wrongly refused to convey, or puts it out of his power to contract by conveying to a stranger without notice of the purchaser's rights. Were the rule otherwise, the vendor might in every case in which the land had enhanced in value before the time fixed for making the conveyance sell to a third person, return the purchase price to the first purchaser and put in his own pockets the difference between the two values. But if the vendor abandons

the contract and the purchaser acquiesces in the vendor's attempt to rescind, instead of demanding a deed and standing upon the contract, he can recover only the purchase money and interest."

The author cites numerous cases in support of the text and among them is the case of *Wilson* v. *Spencer*, 11 Leigh (38 Va.) 261. This is stated in the syllabus of the latter case:

"Though in general, for the breach of an executory contract to convey land, the vendee is not entitled to more damages than the purchase money he has actually paid, and interest thereon (*Thompson's Ex'r* v. *Guthrie's Adm'r*, 9 Leigh [36 Va.] 101), yet the rule will not be applied where the fraudulent conduct of the vendor makes it unreasonable to limit the vendee to that measure of damages. If, for example, a vendor who has the title in him at the time of sale, shall, after his contract, disable himself to perform it by conveying the land to another, he will be liable for the value at the time of the breach; and interest may be allowed on such value from that time."

The learned text writer, next above cited, continues as follows:

"Sec. 91. *Where the Vendor Acts in Good Faith.—Flureau* v. *Thornhill,* * * *. As a general rule a vendor of property, whether real or personal, who, from whatever cause, fails to perform his contract, is bound to place the purchaser, so far as money will do it, in the position he would have been in if the contract had been performed. Ordinarily the motives and purposes of either party in entering into the contract, or the intent of either to abandon or to perform it, are irrelevant to the question of what damages shall be awarded in case of a breach. An exception to this rule has been held to exist wherever the vendor of real property is unable to

convey a good title, if he in good faith entered into the contract believing that his title was good. The leading case upon this point in England is *Flureau* v. *Thornhill*, (2 W. Bl. 1078) \* \* \* Some dissatisfaction with this decision has been expressed in several English cases, but it is now regarded there as settled law. In the American States it is believed that the weight of authority inclines to the same rule, namely, that the purchaser can have no damages for the loss of his bargain if the vendor sold in good faith, believing that his title was good \* \* ."

In sections 97, 98 and 99 of the valuable work last quoted the right of the vendee to recover damages for the loss of his bargain is stated to exist under the other three of the four classes of circumstances mentioned in the first above quotation therefrom, subject to certain distinctions not material to be considered in the instant case, namely: (2) "Where the vendor acts in bad faith, knowing that he has no title and no prospect of acquiring it; (3) where, having no title, the vendor sells expecting to acquire it in time to complete the contract;" and (4), "where the title is defective or the estate incumbered, and the vendor has the power to cure the defect or remove the incumbrance, but neglects or refuses so to do."

The exceptions to the English rule, which, as aforesaid, is the general rule in Virginia, are thus stated in 2 Sutherland on Damages (4th ed), sec. 581:

"*English Rule, when not Applied, if the Person Selling is in Fault*—If he knew or should have known that he could not comply with his undertaking; if he, being an agent, contracted in his own name, depending on his principal to fulfill his contract merely because he has power to negotiate a sale; if he has only a contract of the owner to convey, or a bond or deed; if his contract to sell requires the signature of his wife to bar an inchoate right of

dower, or the consent of a third person to render his deed effective; if he makes his contract without title in the expectation of subsequently being able to acquire it and is unable to fulfill by reason of causes so known, as the want of concurrence of other persons; or if he has title and refuses to convey, or disables himself from doing so by conveyance to another person—in all such cases he is beyond the reach of the principle of *Flureau* v. *Thornhill* and is liable to full compensatory damages, including those for the loss of the bargain. This rule applies where the grantor expressly agrees to make a good title, but not in actions of law where the invalidity of the contract sued upon is made a defense. In a recent case a vendor was subjected to the severer measure of damages for delay in completing the transfer of the property, that being occasioned by his lack of reasonable diligence in performing the contract, and not because of any lack of, or defect in, title. Where there was a breach by a vendor of a covenant to furnish an abstract of title pursuant to a contract granting an option to purchase land the same measure of damages was applied; the court said it was not material that there should be either allegation or proof that the vendee would have taken and paid for the land if the abstract had been furnished."

Further consideration of the general rule under the aforesaid doctrine, and statements of the reasons therefor, will be found in the opinion of the court delivered by Judge Burks in *Matthews* v. *LaPrade*, 130 Va. 408, 421-3, 107 S. E. 795. In that case the exceptions to the general rule were not considered because not within the pleadings.

[4, 5] An important distinction to be borne in mind, however, is that, where the vendee does not institute a suit for specific performance, but declares upon and seeks damages for the breach of the contract by the

vendor, the rights of the parties are determined in accordance with the rules of law applicable as of the time fixed for the completion of the contract; not by the rules applied in equity, under which the time for the completion of a contract is sometimes extended. *Sachs* v. *Owings, supra* (121 Va. 162, 92 S. E. 997). When the authorities speak of the ability or inability of the vendor to convey the title contracted to be conveyed; of his disabling himself from making or his neglect or refusal to make the conveyance, they have reference to the ability, or inability, neglect or refusal to so convey at the time fixed for the completion of the contract, not to any subsequent time.

[6, 7] Moreover, where the vendee sues for damages for breach of the contract, thus electing not to seek to enforce its performance, he necessarily treats the contrack as broken, and the measure of the damages, in so far as affected by the motives and conduct of the vendor, is wholly determined by the vendor's motives and conduct prior to and at the time of the breach of the contract. In such a suit, the vendee cannot rely upon the conduct of the vendor after the breach of the contract, except as evidencing the lack of good faith in his conduct prior to or at the time of the breach. The vendee cannot hold on to the contract as binding upon and fixing the duty of the vendor after its breach, if, instead of seeking specific performance of it, so as to rely upon the contract as still in force, he sues for damages for its breach. He has the right of election between the two remedies. He must choose between the two and having chosen he must abide by his choice. He cannot have the relief afforded by the remedy in equity, when he has chosen the remedy at law.

This brings us to the determination of the question of fact on which the decision of the branch of the case now under consideration turns, namely:

[8] 3. Does the preponderance of the evidence prove that the vendors acted in bad faith in making the contract to convey a good, *i. e.*, a marketable, title, or in what they did or neglected to do on or before the time fixed for the completion of the contract?

The question must be answered in the negative.

The provisions in the contract itself fixing the time for its completion were, in substance, as follows: That the vendors should furnish to the vendees abstracts of title to the lands as speedily as possible, and not later than the 1st day of October, 1905, and (might) at the same time tender an apt and proper deed conveying said lands, according to their metes and bounds as (then) known, and with covenants of general warranty, and at the expiration of fifteen days thereafter (which time was given the (vendees) to examine said abstracts and deed), the cash payment upon said lands (should) at once become and fall due, provided said deed be found satisfactory to the (vendees).

[9] At law, the time so fixed was of the essence of the contract (Sugden on Vendors [8th Am. ed.], bottom p. 257). This time could, of course, be extended by mutual assent of the parties, and by the conduct of the parties in the instant case it was extended until noon December 16, 1905; but, by express notice in writing from the vendors to the vendees, mutual assent to its further extension ended at the time last named and that became and was the time fixed for the completion of the contract in the particulars of the delivery of the deed and the payment of the cash payment of purchase money and the execution and delivery of the deferred purchase money notes—the only acts of completion of the contract which are material in the instant case.

The evidence is so voluminous as to make it impractical to set out here in detail the portions of it which

bear upon the question of fact now under consideration. It must, therefore, suffice for us to say that we consider that the preponderance of the evidence shows the following facts, namely: .

(a). That the vendors, at the time they entered into the contract involved in this suit, did so in good faith, believing that they had at that time a good, *i. e.*, a marketable, title to the lands sold, and that the deed provided for in the contract would convey such title.

[10] (b). That the incumbrances found to exist did not render the title unmarketable, because they could have been removed by the application of a definite portion of the purchase money. *Sachs* v. *Owings, supra* (121 Va. 162, 92 S. E. 997).

[11] (c). That the defects in the title, consisting of the need of certain conveyances, which were supplied by the deeds in escrow subject to delivery upon the payment of certain sums of money, did not render the title unmarketable, because those defects could have been removed also by the application of another definite portion of the purchase money.

(d). That the evidence does not show that the title of the vendors to the portions of the land claimed to have been derived by adverse possession, was an unmarketable title.

[12] The authorities hold that title by adverse possession is, under certain circumstances, a marketable title. Maupin on Marketable Title to Real Estate, pp. 699, *et seq.* The evidence before us fails to show that such requisite circumstances did not exist in the instant case. The evidence on this subject does not go beyond showing that the attorneys for the vendees were not satisfied with the abstracts of title and demanded abstracts setting out more fully the circumstances attending the acquisition of the title by adverse possession in the instances where the title depended on such possession.

[13] (e). That there were a number of defects in title
existing at the time fixed for the completion of the con-
tract, which affected a substantial portion of the land
embraced in the contract, but which need not be spe-
cifically mentioned, which rendered the title to such por-
tion of the land unmarketable; from which situation the
result followed that the vendors must be considered as
having breached the contract, in that they were unable
to convey a marketable title as to a substantial portion
of the land at the time the contract stipulated that con-
veyance of a marketable title to the whole of the land
should be made. But as to all of the defects in title ex-
isting at the time fixed for the completion of the con-
tract, none of them was caused by the vendors after the
sale, and none of them, other than those specifically
above mentioned, was known by the vendors to exist at
the time of the sale, so far as the evidence discloses; and
the defects which were known by the vendors to exist
at the time of the sale were equally as well known at
that time by the vendees.

[14] (f). That in so far as there may have been a fail-
ure on the part of the vendors to furnish the vendees
with abstracts of title as complete as they should have
been, the facts were that the vendors employed.and re-
lied upon able and reputable attorneys to perform that
undertaking, who are above the suspicion of any designed
dereliction in the premises; and if we regard the evi-
dence as showing that there was a breach of the contract
on the part of the vendors in the particular of failing to
furnish the abstracts of title as required by the contract,
there is no evidence that such failure was due to bad
faith on their part. And finally,

(g). That the vendors, at the time finally fixed for the
completion of the contract, did not neglect or refuse to
make the conveyance which it was in their power to

make, but, on the contrary, offered to make such conveyance by the tender of the deed which they made on December 16, 1905.

[15] The circumstance that the vendors made the tender of that deed, and thus gave the vendees the option to take the lands with such title as the vendors could convey, before the vendors made any contract of sale to anyone else; and the further circumstances that the vendors made no profit by the subsequent sale to others after the vendees declined to take the property under their contract, and that the subsequent purchasers considered marketable and took the title which the aforesaid vendees declined to take, are dominant features of the case, and seem to us to be sufficient of themselves to dissipate any suspicion as to the motives of the vendors which might otherwise arise from the evidence and to stamp the conduct of the vendors as having been in good faith throughout the transaction.

We come now to the determination of the remaining question raised by the assignments of error by the appellants, namely:

[16] 4. Did the court below err in refusing to allow the appellants to recover for the value of time occupied by D. A. Langhorne in advertising and developing the property for resale?

The question must be answered in the negative.

The right to the recovery in question must rest upon the same ground as the right of a vendee to recover the value of improvements placed by him on premises pending the completion of a contract of sale, and especially so where, as in the instant case, possession of the property has not been delivered to the vendee.

[17] In Maupin on Marketable Title to Real Estate, sec. 96, p. 222, this is said: "If the title fail the purchaser cannot recover against a vendor acting in good

faith the value of improvements placed by him on the premises. If he expends money in improvements when he is uncertain about the title, he does so at his own risk."

[18] 5. Did the court below err in refusing to allow the appellants to recover the sum of $3,500 expended by D. A. Langhorne in attorneys' fees paid for examining the titles to the land?

The question must be answered in the affirmative.

In the valuable work last above cited, in section 93, p. 219, this is said: "As a general rule the purchaser, on failure of the title, may recover as damages, in addition to such part of the purchase money as has been paid, the expenses incurred by him in examining the title. If the vendor is innocently mistaken as to the goodness of his title and the contract contains no warranty of ownership, express or implied, it has been held that the purchaser cannot recover such expenses." Citing numerous authorities.

In the case before us the contract contains an implied warranty of ownership.

In *Northridge* v. *Moore*, 118 N. Y. 422, 23 N .E. 570, 571, this is said in the opinion of the court: "The vendee is not required to take anything less than a good marketable title, and the precautionary means of ascertaining about it by examination before parting with the purchase money and accepting a conveyance, are properly made available by way of protection, and unless an understanding in some manner appear to the contrary, the examination of the title by the vendee and the reasonable expense of making it, may be regarded as in the contemplation of the parties and treated as properly incidental to the contractual situation, and, consequently, the amount of such expense may, in the event of failure of the vendor to convey, be deemed special

damages resulting from the breach and recoverable as such.''

In 1 Sugden on Vendors (8th Am. ed.), section 10, dealing with the same subject, this is said: "When the plaintiff declares on the original contract, and lays the expenses incurred in investigating the title, etc., as special damages, he will be entitled to recover them as such"—citing *Flureau* v. *Thornhill, supra*, and other English and American cases. See also 3 Sedg. on Dam. (9th ed.), sec. 1017, and cases cited.

[19] That the amount of $3,500 was expended as stated is a fact agreed by stipulation appearing in the record before us. That it was a reasonable expense for the purpose in question is not controverted. The fact that the contract provides that the vendors were to furnish abstracts of title would not alter the principle involved, even if the abstracts had been furnished as contracted for. The abstracts furnished had to be verified, which involved examining the title. The contract indeed, as aforesaid, expressly gives a time to the vendees to "examine" the abstracts of title, which could be effectually done only by verifying them. And this makes it plain that reasonable outlay by the vendees for that purpose was within the mutual contemplation of the parties at the time of the contract.

The sole remaining question for our determination is that raised by the cross-assignment of error by appellees, namely:

[20, 21] 6. Did the court err in decreeing interest in favor of the appellants on the $10,000 first paid by the vendees on account of the purchase money?

There are cases, where the vendee has been put in possession of the real estate, and there are other circumstances not involved in the instant case, in which the vendee is not entitled, upon breach of the contract of sale by the vendor, to any interest upon the recovery

back of purchase money paid (Maupin on Marketable
Title to Real Estate, secs. 94 and 95, pp. 220-221); but
it is not contended for appellees that the instant case
falls within that class of cases. The position of the ap-
pellees on the question now under consideration is that
the tender by the vendors of the return of the payment
mentioned and the refusal of the vendees to accept it
stopped the running of interest on the obligation to re-
turn this payment, from the time of the tender; and a
number of authorities are cited, which upon examina-
tion, however, are found to involve cases where the
whole amount owing was tendered. And it is admitted
in the brief for appellees that the contention may be
made under the Virginia decisions that the tender in the
instant case must have been "kept good" in order to de-
feat the interest (see 13 Enc. Dig. of Va. & W. Va. De-
cisions, pp. 196-7, for some of the authorities on this sub-
ject); but the position is taken that each case depends
upon its particular circumstances. The latter position
is correct. We think, however, that in view of the cir-
cumstances, that the tender in question was only of one
payment of $10,000 which the vendees had made (being
therefore a tender of only a portion of the amount ow-
ing), the principle involved in the Virginia decisions on
that subject requires that the tender must have been
"kept good" in order to have the effect claimed for it.
That not having been done we find no error in the de-
cision complained of by appellees in the particular in
question.

Because of the aforesaid error in the failure to allow
the appellants to recover the above mentioned expendi-
ture of $3,500 of attorneys' fees, the decree under review
will be amended allowing such recovery, and as so
amended the decree will be affirmed, with costs to the
appellees as the parties substantially prevailing.

*Amended and affirmed.*

ON PETITION FOR REHEARING.

SIMS, J.:

The feature of the breach of the contract on the part of the vendors in the matter of not furnishing the abstracts of title in accordance with the requirements of the contract is stressed in the petition for rehearing, and the view is earnestly and ably urged that the evidence discloses that the vendors acted in that particular in bad faith, so as to exclude the case from the operation of the doctrine prevailing in Virginia on the subject of the right of a vendee to recover damages for the loss of his bargain. We carefully considered this feature of the case upon the original hearing, and came to the conclusion that the evidence fails to establish that the vendors were guilty of bad faith either in the breach of the contract in the particular just mentioned or in any other particular, all as is set out in the original opinion. We find nothing on this subject in the petition for rehearing which we have not already fully considered and we are unable to come to a different conclusion.

The case of *Hampton Stave Co.* v. *Gardner*, 154 Fed. 805, 83 C. C. A. 521, cited in the petition for rehearing, is not in accord with the doctrine on the subject in force in Virginia, in that it omits all consideration of the element of the action of the vendor in bad faith as being essential to the liability in question.

On the further subject of the claim of interest on the $3,500.00 expended by the appellants in attorneys fees for investigating the title, set up for the first time in the petition for rehearing, we will say this:

Before handing down the original opinion we considered this question, but as neither in the pleading in the court below, nor in the petition for appeal, was there any claim of such interest prior to the decree, we made no mention of the subject in the opinion. Our views then, however, and now, on the subject, are as follows:

[22, 23] In such case interest prior to verdict or decree, if recoverable at all, would be recoverable as special damages, and hence would have to be specially alleged in order to be recoverable. But, aside from any consideration of pleading, we have been cited to no authority whatever in which the recovery of such interest on such expenses has been allowed; and we gather from the English and American cases cited in Sugden and Sedgwick that the uniform practice has been not to allow such recovery. See citations of authority on this point in the original opinion, and especially *Jones* v. *Dyke*, App. Purch. No. 5, No. 8 in appendix to 7th Lond. 3rd Sugden on Vendors, Whart. Rep. (Pa.) at p. 350; *Flureau* v. *Thornhill*, 2 Bl. Rep. 1078; *Richards* v. *Barton*, 1 Esp. 268; *Camfield* v. *Gilbert*, 4 Esp. 221; *Bigler* v. *Morgan*, 77 N. Y. 312, 320; *Cockcraft* v. *Railroad Co.*, 69 N. Y. 201; *Lee* v. *Dean*, 3 Whart. (Pa.) 316, 330. On principle, since the recovery of the outlay is allowed as damages, and not as a contract obligation, no arbitrary rule can be said to exist which would require the allowance of such interest. 1 Sedg. on Damages, sec. 315. Indeed interest, prior to verdict or decree, on purchase money actually paid to and required to be returned by a vendor is not allowed in all cases. Maupin on Marketable Titles to Real Estate, sec. 94. And where interest is allowed on money required to be returned, there are obvious differences between the character of the liability to return money actually paid to the vendor, of which he has had the use and benefit from the time of its receipt, from money paid out by the vendee to others, such as expenses incurred in investigating the title pending the completion of the contract, of which the vendor has at no time had the benefit.

[24] As, however, by our decision the liability of the

vendor to repay the vendee the said expenses of $3,500.00 in amount thereupon became fixed, such payment should, of course, be promptly made. Provision to that effect, under Code, section 6259, was inadvertently omitted in the original opinion, and also from our decree which was entered at the November term, 1922. We will, therefore, now enter decree to the effect that, if said sum of $3,500.00 has not been already paid by the appellees to the appellant administratrix, and is not so paid within thirty days from the date of such decree, the same shall bear interest at the legal rate from the expiration of such thirty days until paid, and the prayer for a rehearing will be denied.