## Richmond.

## W. P. GREER v. HENRI DORIOT.

### November 15, 1923.

1. VENDOR AND PURCHASER—*Exchange of Property—General Warranty—Marketable Title.*—A contract for exchange of property between plaintiff and defendant, as construed by both parties, by the deeds which were prepared by their direction by which the respective conveyances provided for were to have been made, required the defendant to convey to the plaintiff his property with general warranty and covenants of title. Therefore the plaintiff had the right to require a marketable title to such property to be conveyed to him by the defendant.

2. VENDOR AND PURCHASER—*Covenants Required by Executory Contract of Sale—General Warranty Deed.*—A contract for the sale or exchange of land must be construed as calling for a general warranty deed or deeds, unless the contrary is clearly shown.

3. VENDOR AND PURCHASER—*Marketable Title—Failure of Wife to Join in Deed.*—Where plaintiff and defendant agreed to exchange lands a deed from defendant without his wife uniting therein would not convey a marketable title to the property, and the plaintiff had the right to reject such conveyance and maintain an action against defendant for damages for breach of the contract in failing to deliver a deed to the property in which his wife joined as grantor.

4. VENDOR AND PURCHASER—*Marketable Title—Incumbrances—Dower.*—An inchoate right of dower is, according to the better view, and incumbrance, within the meaning of a vendor's agreement to convey a good or marketable title. Therefore, where a vendor is required to convey a title free of incumbrances, a tender of his general warranty deed, in which his wife does not join so as to bar her dower, is not a performance of or an offer to perform his contract, and the fact that the wife refuses to join in the deed does not relieve the vendor from liability.

5. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Measure of Damages—When Vendor Acted in Good Faith.*—If a vendor, at the time he enters into a contract of sale of real estate, which undertakes to convey a marketable title thereto, in good faith believes that he has such a title, but, at the time fixed for the completion of the contract, finds himself unable, through no fault of his own, to convey

such title, and for that reason makes no conveyance, it is settled that, where none of the purchase money has been paid, the vendor is liable in general damages to the vendee for nominal damages only for the breach of the contract to convey.

6. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Measure of Damages—Where Vendor did not act in Good Faith—Knowledge of Defects in Title.*—But where the vendor did not act in his good faith, as where he had knowledge of his want of or defects in his title when he entered into the contract to sell, then for breach by the vendor of his contract to convey the vendee is entitled to recover, as general damagés, for the loss of his bargain, namely, the difference, if any, between the contract price of the property and its value at the time of the breach of the contract.

7. EXCHANGE OF PROPERTY—*Breach of Contract by Vendor—Measure of Damages Where Party did not act in Good Faith—Knowledge of Defects in Title.*—Where a party to an exchange of property does not act in good faith, as where he has knowledge of a want of title or defects in his title, the same rule applies as to the measure of damages as applies in the case of vendor and purchaser, that is the other party to the exchange is permitted to recover the difference between the value of the land which he was to convey and that which he waś to receive, where neither party has conveyed.

8. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Measure of Damages where Vendor had not acted ın Good Faith—Knowledge of Defects in Title—Vendor Believing that he would be Able to Convey a Good Title.*—The rule permitting a purchaser to recover for the loss of his bargain, where the vendor entered into the contract knowing that his title was defective, is applicable, although the vendor may have in good faith believed that he would be able to convey a good title.

9. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Consent . of Third Party Necessary to Conveyance.*—If the vendor, at the time he enters into the contract, knows that it will not be in his power to convey the title he contracts to convey unless he obtains the consent or conveyance of a third person, which at the time of the contract the vendor has no enforceable right to compel, the case does not fall . within the doctrine that-a vendor acting in good faith, without knowledge of his defective title, is only liable for nominal damages. In such case, if the vendor makes an unconditional contract to convey a marketable title, he cannot escape liability for compensatory damages for failure to perform by showing that the lawful act of some third person prevented the performance of his contract.

10. EXCHANGE OF PROPERTY—*Breach of Contract by Vendor—Measure of Damages—Case at Bar.*—In the instant case the plaintiff and defendant agreed to trade houses, and to carry out this agreement the plain-

tiff agreed to buy defendant's Oak street property for the sum of $6,500.00, paying for the same by deeding his house on Ashe street and paying $3,000.00 balance. The lower court instructed the jury that if they believed that this contract was made and breached by defendant the plaintiff was entitled to recover the stipulated price of the Ashe street house, to-wit: $3,500.00

*Held:* Error, as the measure of the general damages for which the defendant is liable to the plaintiff for the breach of the contract by the defendant is the excess difference, if any, between the value of the defendant's Oak street property and the value of the plaintiff's Ashe street property, plus $3,000.00, at the time of the breach.

11. APPEAL AND ERROR—*Judgment by Appellate Court—Section 6365 of the Code of 1919.*—Where the testimony was obscure and was not developed with sufficient definiteness to enable the Supreme Court of Appeals to feel satisfied that it would attain the ends of justice if it were to enter judgment under section 6365 of the Code of 1919, the court awarded a new trial.

12. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Special Damages to Vendee.*—If the vendee suffers any special damage because of a breach of the contract by the vendor, he is entitled to recover such damages.

13. DAMAGES—*Special Damages—Pleading.*—Special damages must be alleged in order to be recovered, unless that requirement is waived by the defendant.

14. VENDOR AND PURCHASER—*Breach of Contract by Vendee—Action by Vendor for Purchase Money.*—The Virginia doctrine that upon a breach of the contract the vendor is entitled to maintain an action on an executory contract of sale for the purchase money has no application to a promise to do a specific thing other than the payment of purchase money. The doctrine has been long established in Virginia and it will not be disturbed in cases to which it is applicable, but the Supreme Court of Appeals is unwilling to extend the doctrine to other cases not falling strictly within it.

Error to a judgment of the Corporation Court of Bristol, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed and a new trial awarded.*

On May 26, 1921, Henri Doriot and W. P. Greer entered into the following written contract:

"This contract memorandum made this 26th day of May, by and between H. Doriot and W. P. Greer, all of Bristol, Va.

Witnesseth:

"That said parties have this day traded houses as follows: The said Doriot agrees to buy the said Greer's house at the corner of Oak and Sycamore streets, Bristol, Virginia, for the sum of $6,500.00, paying for same by deeding said Greer his house at 217 Ashe street, Bristol, Tennessee, and paying $3,000.00 in cash or good securities. These transfers to be completed on May 31, 1921, or as soon as feasible thereafter.

"Witness our hands, this May 26, 1921.

"H. Doriot,
"W. P. Greer."

On May 31, 1921, two deeds were prepared by the direction of the parties, by which the contract was to be carried into execution. These deeds contained general warranty and the usual covenants of title. Henri Doriot and wife executed the deed conveying to Greer the property at 217 Ashe street, Bristol, Tennessee, and tendered it to him, and offered to pay the $3,000.00 in cash or good securities, as provided in the contract. On the day fixed for the completion of the contract, to-wit, May 31, 1921, Greer failed to deliver to Doriot the deed from himself and wife conveying the property at the corner of Oak and Sycamore streets, Bristol, Virginia, giving as his reason for not complying with the terms of his contract his wife's refusal to sign the deed, which was true, as shown by the evidence. He, however, offered to himself execute and deliver the deed, but Doriot declined to accept such a deed.

On June 27, 1921, Doriot filed a bill in chancery against Greer praying that he be compelled to specifically perform the contract on his part. The defendant's demurrer to the bill was sustained, in accordance with the doctrine of *Haden* v. *Falls*, 115 Va. 779, 80 S. E. 576, Ann. Cas. 1915C, 1034, with leave to amend, and, upon complainant's refusal to amend, the bill was dismissed without prejudice to his proceeding at law, if so advised.

On September 29, 1921, Doriot instituted this action against Greer, by notice of motion to recover damages for the breach of the aforesaid contract by the latter, such breach, consisting, as alleged, in the refusal of Greer to convey to Doriot the Oak street property by deed from himself and wife or otherwise comply with his contract, laying the damages at the amount of $5,000.00. There was a trial by jury resulting in the following verdict: "We the jury find for the plaintiff in the sum of $3,500.00, together with normal damages $100.00." On the motion of the defendant, Greer, for a new trial, the court reduced the nominal damages to $1.00 and entered judgment for the plaintiff for $3,501.00, with interest and costs, and the defendant brings error.

Further references to the evidence, so far as deemed material, are made in the opinion.

The material assignments of error by the defendant are to the action of the trial court in giving and refusing instructions and in refusing to set aside the verdict and grant the defendant a new trial; and there is a cross-assignment of error by the plaintiff to the action of the court in instructing the jury upon the measure of damages the plaintiff was entitled to recover for the failure of the defendant to convey his Oak street property.

*S. B. Fulkerson, H. E. Widener*, for the plaintiff in error.

*J. S. Ashworth,* for the defendant in error.

. SIMS, J., after making the foregoing statement, de-livered the following opinion of the court.

The question presented for decision by the assign-ments and cross-assignment of error is as follows:

1. Did the court err in instructing the jury that if they believed from the evidence, by a preponderance thereof, that the contract set up in the notice and intro-duced in evidence was made and breached by the de-fendant as alleged in the notice, the plaintiff was "en-titled to recover the stipulated price of the Ashe street property, to-wit, $3,500.00, but without interest, as it appears that the plaintiff has had the use and posses-sion of same; and (that), in addition thereto, (the) plaintiff (could) only recover nominal damages on ac-count of not getting a conveyance of the Oak street. property"? ·

The question must be answered in the affirmative.

[1-3] As construed by both parties, by the deeds. which were prepared by their direction by which the re-spective conveyances provided for were to have been. made, the contract required the defendant, Greer, to convey to the plaintiff, Doriot, Greer's Oak street prop-erty with general warranty and covenants of title. Therefore the plaintiff had the right to require a mar-ketable title to such property to be conveyed to him by the defendant. *Sachs* v. *Owings,* 121 Va. 162, 92 S. E. 997.. Such, indeed, is the proper construction of the contract. independently of said mutual construction of the par-ties, there being no evidence that the contrary was in-tended by them. *Ford* v. *Street,* 129 Va. 437, 106 S. E.. 379. The deed from Greer, without his wife uniting· therein, would not have conveyed a marketable title to

the property, and the plaintiff, Doriot, had the right to reject such conveyance and to maintain the action against Greer for damages for breach of the contract in failing to deliver a deed to the Oak street property in which the wife of the latter joined as grantor.   27 R. C. L., sec. 236, pp. 509-510, sec. 387, p. 630.

[4] In section 236 of the valuable work just cited this is said:

"  *  *  an inchoate right of dower is, according to the better view, an incumbrance, within the meaning of a vendor's agreement to convey a good or marketable title  *  *  *  .   Therefore, where a vendor is required to convey a title free of incumbrances, a tender of his general warranty deed, in which his wife does not join so as to bar her dower, is not a performance of or an offer to perform his contract, and the purchaser may reject such a conveyance and maintain an action for damages for breach of contract."   And in section 387 of the same work, just cited, this is said:   "And the fact that the inability of the vendor to convey is owing to the refusal of his wife to join in the conveyance so as to bar her dower does not prevent the vendor from being liable in such an action."

This brings us to the consideration of what is the measure of damages applicable in such case.

[5-7] Under the English doctrine of *Flureau* v. *Thornhill* (2 W. Black 1078), which is also the Virginia doctrine on the subject, *Matthews* v. *LaPrade*, 130 Va. 408, 107 S. E. 795; *Davis* v. *Beury*, 134 Va. 322, 114 S. E. 773, 115 S. E. 527, and authorities cited, if a vendor, at the time he enters into a contract of sale of real estate, which undertakes to convey a marketable title thereto, in good faith believes that he has such a title, but, at the time fixed for the completion of the contract, finds himself unable, through no fault of his own, to convey such

title, and for that reason makes no conveyance, it is settled that, where none of the purchase money has been paid, the vendor is liable in general damages to the vendee for nominal damages only for the breach of the contract to convey. But where the situation of the vendor is such that the doctrine mentioned does not apply, it is uniformly held that for breach by the vendor of his contract to convey the vendee is entitled to recover, as general damages, for the loss of his bargain, namely, the difference, if any, between the contract price of the property and its value at the time of the breach of the contract. And, as said in 27 R. C. L., sec. 588, p. 631: "The same rule in effect has been announced as regards contracts for the exchange of land; that is, the plaintiff is permitted to recover the difference between the value of the land which he was to convey and that which he was to receive, where neither party has conveyed * * *. This is very generally recognized where the vendor cannot be said to have acted in good faith, as where * * * * the vendor had knowledge of his want of or defects in his title."

In 2 Sutherland on Damages (4th ed.), sec. 581, cited and quoted in *Davis* v. *Beury, supra* (134 Va. at pp. 343-4, 114 S. E. 773, 115 S. E. 527), and, so far as material, again quoted here, it is said that the aforesaid doctrine of *Flureau* v. *Thornhill* does not apply if the vendor, at the time of the contract, " * * knew or should have known that he could not comply with his undertaking; * * * if his contract to sell requires the signature of his wife to bar an inchoate right of dower, or the consent of a third person to render his deed effective; * * *."

[8] In 27 R. C. L., sec. 389, pp. 632-3, this is said: "The rule permitting the purchaser to recover for the loss of his bargain has been applied where the vendor

entered into the contract knowing that   *   *   his title was defective   *   *   .   It has been held immaterial that the vendor may have in good faith believed that he would be able to   *   *   convey a good title, as where a trustee agreed unconditionally to convey but was unable to do so because the beneficiary refused to give his consent, such consent being essential to the power to convey." Citing among other cases, *Pumpelly* v. *Phelps*, 40 N. Y. 59, 100 Am. Dec. 463.

In New York the doctrine of *Flureau* v. *Thornhill* is in force, as in Virginia, and in the case last mentioned, the court said this: "Where   *   *   the vendor contracts to sell and convey, in good faith, believing he has a good title, and afterwards discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfill his contract, he is only liable for nominal damages for a breach of his contract" (citing New York cases). "The rule is otherwise, however, where a party contracts to sell land which he knows at the time he has not the power to sell and convey: and if he violates his contract in the latter case, he should be held to make good to the vendee the loss of his bargain; and it does not excuse the vendor that he may have acted in good faith and believed, when he entered into the contract, that he would be able to procure a good title for his purchaser." Citing a great number of authorities.

[9-11] In the jurisdictions in which the doctrine of *Flureau* v. *Thornhill* prevails the distinction seems to be well established certainly by the great weight of authority, that, if the vendor at the time he enters into the contract knows that it will not be in his power to convey the title he contracts to convey, unless he obtains the consent or conveyance of a third person, which at the time of the contract the vendor has no enforceable right to compel, the case does not fall within such doctrine.

In such case, if the vendor makes an unconditional contract to convey a marketable title, he cannot escape liability for compensatory damages for failure to perform by showing that the lawful act of some third person prevented the performance of his contract.    There are two cases which hold that, where the ability of the vendor to convey depends upon the contingency of the approval of the court of the sale of a portion of the interests in the land sold, and both vendor and purchaser knew this at the time of the contract of sale and there are other peculiar circumstances, only nominal damages can be recovered by the purchaser for the failure of the vendor to convey due to the refusal of the court to confirm the sale.    See *Eggert* v. *Pratt*, 126 Iowa 727, 102 N. W. 786, *Margraf* v. *Muir*, 57 N. Y. 155.    But the holding in these cases has no application to the case before us. Therefore, under the above cited authorities, and upon principle, we are of opinion that the instant case does not fall within the aforesaid doctrine of *Flureau* v. *Thornhill*, and that the measure of the general damages for which the defendant is liable to the plaintiff for the breach of the contract by the defendant is the excess difference, if any, between the value of the defendant's Oak street property and the value of the plaintiff's Ashe street property, plus $3,000.00, at the time of the breach, which was also the time fixed for the completion of the contract by the defendant.    If the respective properties had any market value at such time, the excess difference in the market value of the former over the latter property, plus $3,000.00, if any, would be the proper measure of the general damages which the plaintiff would be entitled to recover.    This question was not submitted to the jury but was taken from them by the instructions.    There was some evidence before the jury, which, as a whole, tended strongly to show that at the

time of the contract and also at the time of its breach by
the defendant, both properties had a market value, and
that the market value of the defendant's Oak street
property was only $6,500.00; and that the market value
of the plaintiff's Ashe street property was $3,500.00; so
that there was no excess difference between the market
value of the defendant's and that of the plaintiff's prop-
erty, plus $3,000.00; but the testimony on that subject
is obscure and is not developed with sufficient definite-
ness to enable the court to feel satisfied that we would
attain the ends of justice if we were to enter judgment
thereon under section 6365 of the Code, rather than to
award a new trial.

[12, 13] There is evidence in the record of some small
expenditures, such as $5.00 fee paid by the plaintiff for
draft of deed from himself and wife to the defendant,
$2.05 expense of moving a telephone and the expense of
hauling "some packing cases" (the amount of the latter
expense not stated), which the plaintiff is entitled to re-
cover as special damages, due to the aforesaid breach of
contract by the defendant.   And if the plaintiff suf-
fered any other special damages, because of the breach
of the contract, he is also, of course, entitled to recover
such damages.   However, as is well settled, such spe-
cial damages must be alleged in order to be recovered
(27 R. C. L., sec. 394, p. 637), unless that requirement
of pleading is in some way waived by the defendant.

By the instruction in question the court decided that
the contract entitled the plaintiff to recover $3,500.00,
as "the stipulated price of the Ashe street property,"
being the measure of damages which is applicable in
certain actions by a vendor against a vendee for breach
of contract of sale of real estate, consisting of the failure
to comply with the promise in the contract to pay the
purchase money, under the authority of *Turner* v. *Hall*,

126 Va. 247, 104 S. E. 861, and the authorities therein cited, among which are *Bailey* v. *Clay*, 4 Rand. (25 Va.) 546, and 2 Minor's Inst. (4th ed.) 864.

As appears from an examination of the authorities just mentioned, the cases involved are all cases of actions of assumpsit by the vendor on the executory contract of sale, based on the promise therein of the vendee to pay to the vendor the purchase money. They are not actions to recover damages for the breach of the promise of the vendee to do something else than to pay money. And in each of these cases the obligation of the vendee, which is enforced, is his promise to pay, which is expressed in the contract, and the whole of his promise as expressed in the contract, not merely a part of it. These cases, in effect, enforce the promise to pay contained in the contract—*i. e.*, they, in substance, enforce entire specific performance of the contract on the part of the defendant. But such an action as that in the instant case does not seek to and cannot enforce specific performance of the entire contract.

As said in the opinion delivered by Judge Kelly in *Turner* v. *Hall*, the doctrine of that decision on the subject under consideration is based on the position that "the vendor is entitled to maintain an action on an executory contract of sale *for the purchase money*, on the theory that the action is in the nature of a suit in equity for specific performance." (Italics supplied.)

And when we attempt to apply the doctrine of the authorities just mentioned to the instant case, it becomes at once apparent that it is inapplicable. Although we may regard Doriot as the vendor, and Greer as the vendee of the Ashe street property, still, if the doctrine just mentioned were applied, the only promise of Greer to which it would be applicable was his promise to convey to Doriot a marketable title to the Oak street

property, and that was the promise which was broken by Greer.   For the breach of that promise the measure of damages is as above stated.   There was no promise of Greer to pay to Doriot any sum of purchase money in any event whatever.   The promise of Greer was to do a specific thing other than the payment of purchase money for the Ashe street property of Doriot, namely, to convey Greer's Oak street property in exchange for the former property and for $3,000.00 in cash to be paid to him by Doriot.   The breach of the contract by Greer, consisted, as is apparent, not in his refusal to pay the plaintiff, Doriot, $3,500.00, for he made no such promise, but solely in his failure to convey the Oak street property as he contracted to do.   The plaintiff himself, in his testimony, admits that the defendant did not promise to pay the plaintiff any purchase money, as appears from the following excerpt from such testimony on cross examination:

"Q. Now, at the time you and Greer entered into the contract, did you have any idea of selling Greer your property for a money consideration—cash consideration?

"A. No.   *   *   *"

Indeed, that the valuation of $3,500.00 was placed on the plaintiff's Ashe street property does not expressly appear from the contract, but only by inference.   And it is manifest from the contract itself (and there is not a scintilla of evidence in the record to the contrary) that such valuation, as well as that of $6,500.00 of the defendant's Oak street property, was merely the valuation at which the property was to be "traded" or exchanged.   To wrest a valuation stated in the contract for that purpose, into a contract on the part of the defendant to buy the plaintiff's property outright at such a valuation, would be to make a contract for him which he did not make.

It is apparent, therefore, that no action would lie against Greer *for purchase money.* Indeed, the action in the instant case was not in fact brought against Greer for any purchase money, but, as aforesaid, for his breach of contract to convey—to do something else than to pay money. Nor, in view of the terms of the contract, could this action at law have been brought otherwise than for damages for breach of the contract. It is not an action on a contract of sale for purchase money which the defendant vendee has agreed to pay, nor could such an action be properly brought on the contract in suit. Hence, the doctrine of *Turner* v. *Hall,* and like authorities on the subject, cannot have any application.

[14] In truth, the doctrine just referred to, even as applicable to cases falling strictly within it, has been adopted only in a few jurisdictions. As said in *Turner* v. *Hall, supra* (128 Va. at p. 256, 104 S. E. at p. 864): "The great weight of authority * * * is to the effect that in an action at law the vendor can only recover damages for the breach of an executory contract of sale, and if he desires to recover the purchase money as such, he must go into equity and sue for specific performance of the contract." And in 27 R. C. L., sec. 366, pp. 612-613, this is said: "According to the weight of the authorities, if the contract is executory and the agreements to convey and to pay the purchase money are dependent, the vendor cannot maintain an action for the purchase money, after a tender of the conveyance, but can only recover at law damages for the breach of the contract." This doctrine, however, having been so long established in Virginia, we have no intention to disturb it in cases to which it is applicable; but we are unwilling to extend the doctrine to other cases not falling strictly within it.

In the argument for the plaintiff, *Henderson* v. *Light-foot*, 5 Call (9 Va.) 241; *Minnick* v. *Williams*, 77 Va. 758; and *Max Meadows Land Co.* v. *Bridges*, 95 Va. 184, 27 S. E. 839, are relied on to sustain the position that as the defendant would not pay for the Ashe street property of the plaintiff by conveying to him defendant's Oak street property as provided in the contract, the law will compel the defendant to pay for the Ashe street property in money. An examination of these cases discloses that none of them is in point.

*Henderson* v. *Lightfoot* was not an action at law but a suit in equity for specific performance. Moreover the whole of the contract which remained unperformed was specifically enforced in that case, not merely a part of it.

*Minnick* v. *Williams* was an action of debt brought on an agreement in writing by which the defendant obligated himself to pay to the plaintiff $350.00 rent, at certain times, "either in goods at regular prices or in current money." There was a demurrer to the declaration on the ground that the action was not on a contract to pay a sum certain but was an agreement to do something else in the alternative, on which an action of covenant, not debt, was the proper remedy. The court in the opinion said and held this: "The action of debt only lies for money. On an obligation to pay or deliver any other article, covenant is the proper remedy, and the recovery is of a compensation in damages; 'goods at regular price' cannot be considered as money. * * * But when the obligation is to pay a sum of money, or some other article, in the alternative, on or before a certain day, the obligor has his election to deliver the article on or before the day; but if he fail to do so, he is liable absolutely for the money, and to an action of debt for the money." Had the contract in the instant case provided that the defendant would pay $3,500.00 for

the Ashe street property of the plaintiff *or* convey defendant's Oak street property for the Ashe street property and $3,000.00, the case would be in point. It is precisely for the lack of any promise of the defendant in the contract in the instant case to pay money to the plaintiff in the alternative, or otherwise, that the action for the money cannot lie.

*Max Meadows Land Co.* v. *Bridges* was a suit in equity to recover compensation for a deficiency in acreage in an exchange of lands, due to a mistake when the deeds of exchange were executed. The recovery allowed rests upon well settled principles of equity jurisdiction, which have no relation to the principles involved in the instant case. And then, too, the whole of the contract which remained unperformed was enforced, not merely a part of it.

The case will be reversed and a new trial awarded the defendant.

*Reversed and new trial awarded.*

KELLY, P., and WEST, J., dissenting.