# Richmond.

## W. J. MATTHEWS v. J. C. LAPRADE.

### December 17, 1925.

1. VENDOR AND PURCHASER—*Breach of Executory Contract of Sale by Vendor—Measure of Damages.*—When an executory contract for the sale and conveyance of land is breached by the vendor and none of the purchase money has been paid, the vendee can only recover nominal damages as general damages, if the vendor at the time he entered into the contract of sale in good faith believed that he had a marketable title, but at the time fixed for the completion of the contract finds himself unable, through no fault of his own, to convey such title.

2. VENDOR AND PURCHASER—*Breach of Executory Contract of Sale by Vendor—Measure of Damages—Loss of Bargain—Exceptions to the General Rule.*—The exceptions to the general rule, that where the purchase money has not been paid, the vendor is liable only for nominal damages, are as follows: If the vendor knew or should have known that he could not comply with his undertaking; if he, being an agent, contracted in his own name, depending on his principal to fulfill his contract merely because he has power to negotiate a sale; if he has only a contract of the owner to convey, or a bond or a deed; if his contract to sell requires the signature of his wife to bar an inchoate right of dower, or the consent of a third person to render his deed effective; if he makes his contract without title in the expectation of subsequently being able to acquire it and is unable to fulfill by reason of causes so known, as the want of concurrence of other persons; or if he has title and refuses to convey, or disables himself from doing so by conveyance to another person—in all such cases he is liable for full compensatory damages, including those for the loss of the bargain.

3. VENDOR AND PURCHASER—*Breach of Executory Contract of Sale by Vendor—Measure of Damages—Exceptions to the General Rule—Instructions—Case at Bar.*—In the instant case, defendant had executed an option contract for the sale of real estate to plaintiff. At the time this contract was executed, the legal title to the real estate described therein was vested in the defendant and one E. Defendant refused to perform on the ground that E. declined to join in making a deed to plaintiff. It appeared that E. really owned three-fourths and defendant one-fourth of the land in question, and that it was

purchased with the understanding that defendant could not sell without E.'s approval and consent. Defendant had no authority from E. to make a sale of the land. The evidence was conflicting as to whether the delivery of the option contracts was conditional and as to whether plaintiff had knowledge of E.'s interest in the land.

*Held:* That there was sufficient evidence in the record upon which to base instructions in behalf of plaintiff, stating the measure of damages a vendee is entitled to recover when he brings himself within the exceptions to the general rule in a case of this character.

4. PLEADING—*Exceptions to a General Rule of Law.*—A party who claims to come within an exception to a general rule of law must in his pleadings state such facts as clearly bring him within such exception.

5. VENDOR AND PURCHASER—*Breach of Contract by Vendor—Measure of Damages—Exceptions to the General Rule—Pleading—Case at Bar.*— In the instant case, an action against a vendor for breach of contract to convey, the declaration charged facts going to show that defendant knew at the time he entered into the contract it would not be in his power to convey the title to the land he agreed to sell "unless he obtained the consent or conveyance of a third person, which at the time he had no enforceable right to compel."

*Held:* That the declaration brought the case within the exceptions to the general rule as to the measure of damages, in a case of a breach of contract by vendor, and plaintiff's right of recovery was not limited to proof of fraud.

6. PLEADING—*Declaration—Sufficiency Function of Declaration.*—It is not the function of a declaration to set out all the facts and circumstances in the case, but simply to give the defendant such reasonable information of the nature of the complaint as will enable him to make his defense. Sufficiency in substance in a declaration is all that is required under our procedure.

7. VENDOR AND PURCHASER—*Breach of Executory Contract of Sale by Vendor—Measure of Damages—Exceptions to the General Rule.*—The vendee is not restricted to proof of fraud or bad faith to bring him within the exceptions to the general rule, in regard to the measure of damages for a breach by the vendor of his contract to convey, allowing vendee to recover for loss of bargain. For if he alleges and proves such facts as show that the vendor knew, at the time of making the contract, that his title was defective, and that he did not possess the power to convey a marketable title without the concurrence of a third person, he brings himself squarely within such exceptions, and it is immaterial that the vendor may have acted in good faith and believed that he would be able to procure a good title for the purchaser.

8. VENDOR AND PURCHASER—*Breach of Executory Contract of Sale by Vendor—Measure of Damages—Exceptions to the General Rule—Pleading*

*and Proof—Case at Bar.*—In an action of assumpsit for breach of contract of sale by the vendor, the declaration alleged that defendant represented himself as the sole owner of the property; that this representation was false, and defendant knew that it was false; that defendant was without authority to sell without consent of his co-owner, etc.

*Held:* That it was not necessary for plaintiff to prove each one of the alternative state of facts, as any one of such state of facts would have constituted an exception to the general rule and entitle him to recover for the loss of his bargain.

9. PAROL EVIDENCE—*Should be Clear, Unequivocal and Convincing—Instructions—Case at Bar.*—The application of the parol evidence rule to unsealed instruments has proven to be exceedingly satisfactory, and ample for the protection of the rights of all concerned. Its strict enforcement ought not to be relaxed, and where parol evidence is admissible in contravention of the *prima facie* right of another, it should be clear, unequivocal and convincing, and an instruction to this effect asked by the plaintiff, in an action against a vendor for a breach of an option contract in writing for the sale of real estate, should have been given as asked.

10. EVIDENCE—*Preponderance of Evidence—Instructions—Modification of Instructions.*—An instruction asked for on the preponderance of evidence told the jury that they might take into consideration, among a number of other things, "whether their evidence squares with acknowledged standards of human conduct, or is at variance with such standards."

*Held:* That the court did not err in modifying the instruction by striking out these words. This expression may constitute legitimate argument, but it is not recognized as a fixed principle of law. The instruction as given by the court sufficiently informed the jury as to the weight to be attached to the evidence of the witnesses who had testified at the trial.

11. VENDOR AND PURCHASER—*Breach by Vendor of an Option Contract of Sale—Witnesses—Case at Bar.*—In the instant case, an action for breach of an option contract of sale by the vendor, a witness who it appeared had an interest with plaintiff in the contract was asked what position he had taken with reference to the validity of the option during negotiations with the joint owner of the property to induce him to join in the deed. This question the court refused to allow him to answer. On cross-examination this witness had been closely questioned for the purpose of showing that the witness considered the contract unenforceable or that he had surrendered plaintiff's right under it.

*Held:* That the witness should have been allowed to answer the question.

Error to a judgment of the Circuit Court of Charlotte county, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

The opinion states the case.

*Allen & Weaver,* for the plaintiff in error.

*J. Taylor Thompson,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is an action of assumpsit brought by W. J. Matthews against J. C. LaPrade to recover damages for the alleged breach of an option contract for the sale of real estate, which reads as follows:

"Dec. 1, 1919. Received of W. J. Matthews $10.00 for option on one tract of land in Prince Edward county for twenty days from date, same containing 466 acres, more or less. Payments as follows: 1–3 cash, balance 1, 2 and 3 and 4 years, purchase price to be $6,000.00. (Sgd.) J. C. LaPrade. Witness: H. A. Lester."

Upon the trial of the case in the court below there was a verdict and judgment for the defendant, and it is now before this court upon a writ of error to that judgment.

The petition contains thirteen separate assignments of error, eleven of which are based upon exceptions taken to the action of the trial court in refusing· or modifying certain instructions asked for by the plaintiff, and in giving certain instructions asked for by

the defendant.    The instructions asked for by the
plaintiff and refused, are as follows:

"A. The court instructs the jury that if they shall
believe from the evidence that the defendant signed
the option contract sued on and delivered the same to
the plaintiff without condition, and subsequently
breached said contract, the general rule of law in this
State is that the measure of damages for such breach
is the value of the land at the date of the sale, and not
the value at the time of the alleged breach of the
contract, and if a price has been agreed on, that is the
best evidence of its value and is to be accepted as
such. If the purchaser has paid anything, he is entitled
to recover the money paid, with interest, and also any
sums properly expended by him for the examination
of the title.    But there are exceptions to this rule.
Such a rule does not prevail, if the evidence shows
that the vendor's breach of contract results not from
his misfortune in proving to be not entitled to the
land of which he believed himself the owner, but from
his misconduct, or bad faith; or if he knew or should
have known that he could not comply with his under-
taking, or if his contract required the signature or
consent of a third person to render his deed effective;
or if he made his contract without title in the expecta-.
tion of subsequently being able to acquire it, and is
unable to fulfil by reason of causes so known, as the
want of concurrence of other persons—in all such
cases a vendor breaching his contract is liable to full
compensatory damages, including those for the loss
of the bargain, that is the difference, if any, between
the contract price and the market value of the land
at the time of the alleged breach.    But if the jury be-
lieve that the defendant is guilty of no bad faith or mis-
conduct in the transaction, or that he delivered the

option contract in question, subject to the condition that it was not to take effect except upon the approval of his co-owner, J. B. Epperson, the jury will find for the defendant.

"B. The court instructs the jury that parol evidence, admissible in contravention of the *prima facie* right of another under a written instrument, should be clear, unequivocal and convincing.

"D. The court instructs the jury that if they shall find for the plaintiff under instructions A, B and C, and shall further believe from the evidence that the plaintiff, in reliance upon his option contract with the defendant, entered into a valid contract with a responsible purchaser for a resale of the timber on the land covered by the option contract, and such purchaser was ready, able and willing to comply with such contract of resale; that the defendant knew at the time the option contract was entered into that plaintiff's business was that of buying and selling land and timber for a profit, and that after the said contract was signed by defendant, he knew that plaintiff was showing said land and timber for the purpose of selling same, and that the actual re-sale by plaintiff was brought to the knowledge of the defendant before the option contract expires, then the plaintiff is entitled to recover from the defendant the damages resulting to the plaintiff from the failure to consummate said re-sale."

The instruction referred to above as instruction "C" is in the same terms as the instruction hereinafter stated as instruction No. 9.

The following instructions asked for by the plaintiff were modified by the court to the extent of striking out the words therein which appear in italics:

"5. The court instructs the jury that by preponderance of evidence is meant that evidence which is most convincing and satisfactory to the minds of the jurors. In determining upon which side the preponderance of the evidence is, the jury may take into consideration the opportunities of the several witnesses for seeing and knowing the things to which they testify, their interest (if any), or want of interest (if any), in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, and the facts and circumstances upon the trial; *whether their evidence squares with acknowledged standards of human conduct, or is at variance with such standards,* and from all the circumstances determine the weight or preponderance of the evidence. The jury are the sole judges of the weight of the evidence and credibility of the witnesses."

"9. The court instructs the jury that the *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consisted in preventing the performance of the contract without default of the other party who is willing to perform it, the loss of the party willing to perform will consist of two distinct items or grounds of damages, namely: First, what he has already expended towards performance; secondly, the profits that he would realize by performing the contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character and therefore incapable of that clear and direct proof which the law requires. But when they are the direct and immediate fruits of the contract, they are free from this objection; they are then part and parcel of the contract itself, enter-

26

ing into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation.

"These principles of law are applicable to this case if the jury believe from the evidence that the defendant signed and delivered the option contract in question to the plaintiff, without condition, and that he breached the same in bad faith; *or if knew, or should have known at the time he signed and delivered said contract, that he could not comply with his undertaking; or if his contract required the signature or consent of a third person to render his deed effective; or if he made his contract without title, in expectation of subsequently being able to acquire it, and was unable to fulfil by reason of causes so known, as the want of concurrence of another person,* but unless the jury so believe, they should not be guided by the first paragraph of this instruction."

The defendant asked for only four instructions, all of which were given by the court. Instruction No. 2 told the jury that there was no evidence to sustain the allegations of the second count of plaintiff's declaration, and that they should not consider same. No error is assigned as to that instruction. The three instructions given at the request of the defendant and included in the assignments of error, are as follows:

"3. The court instructs the jury that they must find for the defendant unless they believe from the evidence that the defendant fraudulently represented to the plaintiff that he was the sole owner of the property set out in the option contract and that this was a representation of a material fact and that it was false, and that it was within the knowledge of the defendant and known to him to be false and that such representa-

tion was made by the defendant with the intent, on his part, that the plaintiff should act upon it; and that the plaintiff, in ignorance of its falsity, relied upon it and was damaged thereby.

"The court further instructs the jury that if you believe from the evidence that the plaintiff has proved by a preponderance of evidence and to your satisfaction the above facts, you must find for the plaintiff and fix his damages as set forth in instruction No. 9, provided you shall believe from the evidence that the contract of option was delivered unconditionally.

"7. The court instructs the jury that the burden is on the plaintiff to prove by a preponderance of evidence every material allegation made in his declaration before he can recover any damages from the defendant in consequence of the alleged breach of contract by the defendant, and if the jury believe from the evidence, or lack of evidence, adduced before them in this case, that the plaintiff has not proven by such preponderance of evidence any material part of his allegations, then, in that event, he is not entitled to recover damages and they should find for the defendant.

"8. The court instructs the jury that a party who alleges fraud has upon himself the burden of proving such fraud positively and clearly by a preponderance of evidence, and in this case the burden is upon the plaintiff to prove every allegation involving fraud he alleges against the defendant, and it must be further proven that such allegations of fraud as alleged were made falsely and fraudulently with intent on the part of the defendant that they should be, and were being, relied upon by the defendant, and unless the

plaintiff so proves the fraud he has alleged, the jury should find for the defendant."

It is contended by counsel for plaintiff in error that the facts and circumstances of this case bring it within the doctrine of *Davis* v. *Beury*, 134 Va. 322, 114 S. E. 773, 115 S. E. 527; and *Greer* v. *Doriot*, 137 Va. 589, 120 S. E. 291, and that as instructions designated as "A" and "B," respectively, and instruction No. 9, in the form in which it was offered, correctly set out the law as announced in those cases, the court committed error in refusing them.

[1] In *Greer* v. *Doriot, supra,* it was said:

"Under the English doctrine of *Flureau* v. *Thornhill* (2 W. Black, 1078), which is also the Virginia doctrine on the subject, *Matthews* v. *LaPrade*, 130 Va. 408, 107 S. E. 795; *Davis* v. *Beury*, 134 Va. 322, 114 S. E. 773, 115 S. E. 527, and authorities cited, if a vendor, at the time he enters into a contract of sale of real estate, which undertakes to convey a marketable title thereto, in good faith believes that he had such a title, but, at the time fixed for the completion of the contract, finds himself unable, through no fault of his own, to convey such title, and for that reason makes no conveyance, it is settled that where none of the purchase money has been paid, the vendor is liable in general damages to the vendee for nominal damages only for the breach of the contract to convey. But where the situation of the vendor is such that the doctrine mentioned does not apply, it is uniformly held that for breach by the vendor of his contract to convey, the vendee is entitled to recover as general damages for the loss of his bargain, namely the difference, if any, between the contract price of the property and its value at the time of the breach of the contract."

And in the same opinion Judge Sims goes on to quote with approval other authorities as follows:

"In 27 R. C. L. sec. 389, pp. 632-3, this is said: 'The rule permitting the purchaser to recover for the loss of his bargain has been applied where the vendor entered into the contract knowing that * * * his title was defective * * * . It has been held immaterial that the vendor may have in good faith believed that he would be able to convey a good title, as where a trustee agreed unconditionally to convey but was unable to do so because the beneficiary refused to give his consent, such consent being essential to the power to convey.' "

And citing *Pumpelly* v. *Phelps*, 40 N. Y. 59, 100 Am. Dec. 463:

" 'Where * * * the vendor contracts to sell and convey, in good faith, believing he had a good title, and afterwards discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfil his contract, he is only liable for nominal damages for a breach of his contract. The rule is otherwise, however, when a party contracts to sell land which he knows at the time he had not the power to sell and convey, and if he violates his contract in the latter case, he should be held to make good to the vendee the loss of his bargain; and it does not excuse the vendor that he may have acted in good faith and believed, when he entered into the contract, that he would be able to procure a good title for his purchaser.' "

The learned judge then further observes:

"In the jurisdictions in which the doctrine of *Flureau* v. *Thornhill* (2 W. Black, 1078) prevails the distinction seems to be established, certainly by the great weight of authority, that, if the vendor at the time he entered into the contract knows that it will not be in his power

to convey the title he contracts to convey, unless he obtains the consent or conveyance of a third person, which at the time of the contract the vendor has no enforceable right to compel, the case does not fall within such doctrine. In such case, if the vendor makes an unconditional contract to convey a marketable title, he cannot escape liability for failure to perform by showing that the lawful act of some third person prevented the performance of his contract."

It is also held in the above cited case that if the plaintiff suffers any special damages because of the breach of contract, he is also entitled to recover such damages, provided they are alleged in the declaration.

[2] In *Davis* v. *Beury, supra,* the exceptions to the general rule, that when an executory contract for the sale and conveyance of land has been breached by the vendor, and none of the purchase money has been paid, the vendee can only recover nominal damages as general damages, are stated in the opinion of the court, as follows:

"The exceptions to the English rule, which, as aforesaid is the general rule in Virginia, are thus stated in 2 Sutherland on Damages (4th ed.), sec. 581: '*English rule, when not applied, if the person selling is in fault.*—If he knew or should have known that he could not comply with his undertaking; if he, being an agent, contracted in his own name, depending on his principal to fulfill his contract merely because he has power to negotiate a sale; if he has only a contract of the owner to convey, or a bond or a deed; if his contract to sell requires the signature of his wife to bar an inchoate right of dower, or the consent of a third person to render his deed effective; if he makes his contract without title in the expectation of subsequently being able to acquire it and is unable to

fulfill by reason of causes so known, as the want of concurrence of other persons; or if he has title and refuses to convey, or disables himself from doing so by conveyance to another person—in all such cases he is beyond the reach of the principle of *Flureau* v. *Thornhill,* and is liable to full compensatory damages, including those for the loss of the bargain   *   *   *   .' "

The above mentioned exception to the English rule of *Flureau* v. *Thornhill,* which has been closely adhered to in Virginia—having been adopted and established as the law of this State by the decisions in *Davis* v. *Beury, supra,* and *Greer* v. *Doriot, supra*—the next subject of inquiry is whether instructions "A," "D," and "No. 9," as offered in behalf of the plaintiff, and which were refused or modified by the court as hereinbefore stated, are applicable to the circumstances of this particular case.

[3] An examination of the evidence shows the following uncontradicted facts:

That LaPrade executed the option contract hereinbefore set out, received the consideration therefor, and delivered the contract to Matthews, the plaintiff; that at the time the contract was executed the legal title to the real estate described therein was vested in the defendant and one J. B. Epperson; that within the time prescribed by the option, plaintiff notified the defendant of his purpose to exercise it and offered to perform his part of the agreement, but defendant refused performance on the ground that said Epperson declined to join him in making a deed to the plaintiff for the property, and he could not give a deed without Epperson's concurrence and consent. It also appears from the evidence that, whilst the deed which vested title to the land in defendant and said Epperson conveyed the property to them in equal shares, said

Epperson really owned three-fourths and the defendant one-fourth, and it was purchased by the parties with the understanding between them, that defendant should not sell the same without said Epperson's approval and consent. It further appears that, at the time the option contract was executed by defendant he had no authority from Epperson to make sale of the land, certainly on the terms therein specified; that said contract was executed without Epperson's knowledge or consent, and that he refused to ratify it. The evidence further shows that within ten days after the option contract was executed, plaintiff contracted to sell the timber on the land to one B. C. Garrett, in consideration of $6,250.00, and the conveyance to him by said Garrett of 145 acres of land then owned by said Garrett.

The evidence is in direct conflict as to whether the delivery of the option contract to plaintiff was conditional, and as to whether plaintiff, at the time, had knowledge of Epperson's interest in the land; it being testified by plaintiff's witnesses that he did not know Epperson had any interest and that defendant could not convey him a good title until after the transaction had been closed; and by defendant's witnesses that he informed plaintiff, at the time the contract was delivered, that Epperson owned an interest in the property and that he executed and delivered it upon the express condition that Epperson would have to agree to it.

In view of the principles laid down by the above cited authorities, we consider there is sufficient evidence in the record upon which to base the instructions offered in behalf of the plaintiff, stating the measure of damages a vendee is entitled to recover when he brings himself within the exceptions to the general rule in

cases of this character; namely, if the jury believed from the evidence that the defendant acted in bad faith; or knew, or should have known, that he could not comply with his undertaking; or if his contract required the consent or signature of a third person to render his deed effective; or if he made the contract without title in the land, in expectation of subsequently being able to acquire it, and was unable to fulfill by reason of causes so known, as the want of concurrence of a third person; the plaintiff is entitled to recover as general damages the difference, if any, between the contract price and the market price at the time of the alleged breach, or in other words, for the loss of his bargain.

But it is insisted by counsel for the defendant in error that the cause of action set out in plaintiff's declaration is based solely upon the charge of fraud on the part of the defendant, and that the said declaration does not bring the case within the exceptions to the general rule as set out in the instructions, and they were, for that reason, properly refused or modified. Or, to put it more specifically, that plaintiff was limited in his recovery to proof of actual fraud alone. From a perusal of all the instructions given and refused in the case, this appears to have been the theory adopted by the trial court.

In support of this contention counsel rely upon the language used by Judge Burks in his opinion in *Matthews* v. *LaPrade*, 130 Va. 408. It will be seen from the opinion in that case, which involved the same subject matter of controversy that is presented here, the proceeding was by notice of motion, a demurrer to which was sustained by the trial court, and an amendment to the same offered by the plaintiff rejected. It does not appear what the proposed amendment con-

sisted of, but in speaking of the general rule as to the measure of damages in such cases, the learned judge said:

[4] "But the authorities concede that there are exceptions to the rule, and the plaintiff claims he is within such exceptions. This claim the defendant denies. This controversy was not developed in the trial court, because the proposed amendment of the plaintiff's declaration was not specific enough to put the matter in issue. A party who claims to come within an exception to a general rule of law, must in his pleadings state such facts as clearly bring him within such exception."

This makes it necessary to look at the declaration in the case here. The declaration contains three counts. The second count was properly excluded from consideration by the trial court by an instruction which has already been adverted to. The allegations of the first and third counts are substantially the same, and it does not seem to be material for the purposes of the question now before us which one of them is considered. Let us, however, take the third count.

After alleging that defendant and Epperson were joint owners of a tract of land in Prince Edward county, containing 466 acres, more or less, and only one such tract; that defendant represented to the plaintiff that he was the sole owner of said property, and that in reliance of such representation the plaintiff entered into the option contract in writing hereinbefore referred to; the declaration then alleges in substance that, relying upon said contract and in ignorance of the fact that said Epperson had any interest whatever in the property, plaintiff entered into a contract to sell the same to a responsible person at a profit of $9,365.00, of which the defendant had due notice;

that prior to the expiration of the option, plaintiff notified defendant of his purpose to exercise the option, and offered to perform his part of the agreement according to the terms thereof, and was ready, willing and able to do so; that the defendant refused to perform the contract, "assigning as the reason for such refusal and neglect that one Epperson was interested in said land, who refused to sign a deed thereto, conveying the said property to the plaintiff." The declaration then proceeds to specifically charge the defendant with fraud and bad faith in securing and executing the contract, and alleges that when LaPrade represented the property to be his own, the statement was false, and said defendant knew it to be false, and that "in entering into said contract to sell before he himself had acquired a complete title to said land, and holding out as his own that which was not, and contracting to sell an estate of which he did not have the sole possession or authority to sell, but was merely joint owner thereof with another, constitute an exception to the general rule in Virginia relative to the measure of damages for the breach of a contract to convey real estate."

[5, 6] The declaration may not be skillfully drawn, but it charges facts going to show that defendant knew at the time he entered into the contract it would not be in his power to convey the title to the land he agreed to sell "unless he obtained the consent or conveyance of a third person, which at the time he had no enforceable right to compel."

"It is not the function of a declaration to set out all the facts and circumstances in the case, but simply to give the defendant such reasonable information of the nature of the complaint as will enable him to make his defense. Sufficiency in substance in a declaration is all that is required under our procedure." *Norfolk & P. R. Co.* v. *Sturgis*, 117 Va. 532, 85 S. E. 572.

If the facts are set out in a declaration "with sufficient certainty to be understood by the defendant who is to answer them, by the jury who are to inquire into their truth, and by the court which is to render judgment," it is sufficient.  *Idem.*

"If the matter pleaded be in itself sufficient without reference to the manner of pleading it, the defect is substantial, but if the only fault is in the form of alleging it, the defect is but formal."    Burks Pl. & Prac. p. 345.

"It is not necessary in pleading to state that which is merely matters of evidence. In other words it is not necessary in alleging a fact to state such circumstances as merely tend to prove the truth of the fact."    *Idem.* p. 946.

We are, therefore, of the opinion that the trial court erred in refusing plaintiff's instructions A and D as they were offered, and in limiting plaintiff's right of recovery to proof of fraud, as it did by the modification of plaintiff's instruction No. 9, and the granting of instruction No. 3 at the request of the defendant.

[7] The vendee is not restricted to proof of fraud or bad faith to bring him within the exceptions to the general rule in cases of this character, for if he alleges and proves such facts as show that the vendor knew at the time of making the contract that his title was defective and he did not possess the power to convey a marketable title without the concurrence of a third person, he brings himself squarely within such exceptions, and it is immaterial that the vendor may have acted in good faith and believed that he would be able to procure a good title for the purchaser. *Greer* v. *Doriot, supra,* and authorities there cited.

[8] Nor would it have been necessary for the plaintiff in this case to have proved each one of the alter-

native state of facts upon which instructions A and No. 9 were premised, as any one of such state of facts, if found by the jury to be true, would have constituted an exception to the general rule and entitled him to the measure of damages set forth in the instructions.

[9] We are also of the opinion that plaintiff's instruction B should have been given as asked for. In *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157, where the question was whether parol evidence was admissible to show a conditional delivery of a contract under seal for the sale of real estate, it was said:

"The application of the parol evidence rule to unsealed instruments has proven to be exceedingly satisfactory, and ample for the protection of the rights of all concerned. Its strict enforcement ought not to be relaxed, and where parol evidence is admissible in contravention of the *prima facie* right of another, it should be clear, unequivocal and convincing."

[10] We think the objection to the striking out by the court of the words appearing in italics in plaintiff's instruction No. 5, is without merit. This expression may constitute legitimate argument but we do not feel disposed to recognize it as a fixed principle of law. The instruction as given by the court sufficiently informed the jury as to the weight to be attached to the evidence of the witnesses who had testified at the trial and the elimination by the court of this particular phrase detracted nothing of consequence from its force, as its employment added nothing to it. The most that can be said of it is, it was harmless error.

[11] The twelfth assignment of error relates to the action of the court in refusing to allow the witness Lester to answer the following question:

"What position did you take with reference to the validity or invalidity during the negotiations of that option."

It appears that this witness had previously testified, that he was present when the option contract was executed and delivered, and that he had an arrangement with the plaintiff, Matthews, by which he was to share any profits made out of the transaction. On cross examination he was closely interrogated as to his efforts to induce Epperson to ratify the contract and unite with LaPrade in making plaintiff a deed for the property, as to his failure in that undertaking, and as to an effort on his part to induce Epperson to sell Matthews the timber on the land in controversy. The only purpose of this line of cross-examination could have been to make the impression on the jury that Lester, acting for himself and as Matthews' agent during these negotiations with Epperson, either considered the contract unenforceable or had surrendered plaintiff's rights under said contract. We think, under these circumstances, the witness should have been allowed to explain his reasons for negotiating with Epperson as outlined, and the position he assumed as to the validity and effect of the contract.

The ninth, tenth, eleventh and thirteenth assignments of error relate to the refusal of the court to grant plaintiff's instructions X, Y and Z, and in overruling plaintiff's motion to set aside the verdict of the jury and grant a new trial.

The instructions referred to all relate to the subject of fraud and the record shows were only asked for by the plaintiff because defendant's instruction No. 3 was given by the court over plaintiff's objection. As we have already disposed of that phase of the case, we think it unnecessary to prolong this opinion by dis-

cussing these instructions, and for the same reason it is unnecessary to take up the last mentioned assignment of error.

For the reasons stated we are of opinion that the judgment complained of should be reversed and the cause remanded for a new trial.

*Reversed and remanded.*